UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | | |
|---|---|---|
| DAVID S., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case # 1:21-cv-203-DB |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | MEMORANDUM |
| | § | DECISION AND ORDER |
| Defendant. | § | |

## <u>INTRODUCTION</u>

Plaintiff David S. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 12).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 6, 7. Plaintiff also filed a reply brief. *See* ECF No. 8. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 6) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 7) is **GRANTED**.

## <u>BACKGROUND</u>

Plaintiff protectively filed an application for DIB on April 8, 2019, alleging disability beginning August 1, 2016 (the disability onset date), primarily due to a variety of gastrointestinal complaints, including intestinal malrotation, celiac disease, and chronic diarrhea. Transcript ("Tr.") 11, 202-03, 221. Plaintiff later amended his alleged disability onset date to August 1, 2017.

Tr. 205. Plaintiff's claim was denied initially on June 18, 2019, and again upon reconsideration on October 17, 2019, after which he requested an administrative hearing. Tr. 11. On August 21, 2020, Administrative Law Judge Bryce Baird (the "ALJ") conducted a telephonic hearing,[1] at which Plaintiff appeared and testified and was represented by Kathryn Eastman, an attorney. *Id*. Richard Hall, an impartial vocational expert, also appeared and testified at the hearing. *Id*.

The ALJ issued an unfavorable decision on August 31, 2020, finding that Plaintiff was not disabled. Tr. 8-21. On December 9, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's August 31, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I.   District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") pandemic, all participants attended the hearing by telephone. Tr. 11.

## II.   The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the

Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his August 31, 2020 decision:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since August 1, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairment: intestinal malrotation (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b)[2] except he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for up to 6 hours in an 8-hour day and can stand or walk for up to 6 hours in an 8-hour day. He can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds. He can occasionally balance and stoop. He can never kneel, crouch, or crawl. He can never be exposed to hazards, such as unprotected heights or moving machinery.

6. The claimant is capable of performing past relevant work as a sales manager and as a sales manager and as a master fire alarm mechanic. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7. The claimant has not been under a disability, as defined in the Social Security Act, from August 1, 2017, through the date of this decision (20 CFR 404.1520(f)).

Tr. 11-21.

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits filed on April 8, 2019, the claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Tr. 21.

## **<u>ANALYSIS</u>**

Plaintiff asserts two points of error. First, Plaintiff argues that the Appeals Council erred by failing to evaluate "new" evidence he submitted to the Appeals Council after the ALJ's decision. *See* ECF No. 6-1 at 1, 12-16. The new evidence consisted of an opinion from treating psychiatric nurse practitioner Melissa Merlin, PMHNP ("Ms. Merlin"). *See id.* Next, Plaintiff argues that the ALJ erred in evaluating the opinion of internal medicine consultative examiner Susan Dantoni, M.D. ("Dr. Dantoni"),[3] who noted that Plaintiff may experience significant schedule interruptions due to his need for bathroom breaks and due to pain. *See id.* (citing Tr. 389).

The Commissioner argues in response that the Appeals Council properly considered the newly submitted evidence and reasonably found that it did not show a reasonable probability that it would change the outcome of the ALJ's decision. *See* ECF No. 7-1 at 27-31. Further, argues the Commissioner, ALJ's decision was supported by substantial evidence, even in light of the new evidence submitted to the Appeals Council. *See id.* Next, argues the Commissioner, the ALJ properly evaluated Dr. Dantoni's opinion and reasonably found unpersuasive the portion assessing the need for frequent schedule interruptions due to abdominal pain and need to use the restroom, because the assessment appeared to be based on Plaintiff's subjective complaints at the time and

---

[3] The Court notes that Dr. Dantoni's report is inaccurately labeled as a "Psychiatric Evaluation" (Tr. 386), but it is clear from the report that Plaintiff presented for an internal medicine examination. *See* Tr. 386-90.

not supported by Dr. Dantoni's examination findings or consistent with record evidence noting Plaintiff's lack of distress, stable BMI, and frequent denials of diarrhea or changes in bowel habits. *See id*. at 20-27 (citing Tr. 19).

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the entire record and the ALJ's decision, the Court finds that the ALJ's decision was supported by substantial evidence, including the largely normal physical examination and mental status findings, opinions from a consultative examiner and state agency consultants, Plaintiff's conservative treatment, and his daily activities. Additionally, the Appeals Council properly determined that the medical evidence submitted after the ALJ's August 2020 decision did not show a reasonable probability of changing the outcome of the ALJ's decision. Based on the record, the ALJ reasonably concluded that Plaintiff could perform a restricted range of light work without frequent breaks, and his mental impairments were not so severe and that he could not perform skilled work without several absences per month. Accordingly, the Court finds no error.

On February 19, 2018, Plaintiff consulted with vascular surgeon Julio Alvarez, M.D. ("Dr. Alvarez"), at Vascular Associates of WNY ("Vascular Associates"), for "follow-up of peripheral vascular disease." Tr. 349-51. Dr. Alvarez noted that Plaintiff had an ultrasound which showed "a possible greater than 70 percent stenosis of the celiac axis." Tr. 349. Plaintiff denied any post prandial symptoms. *Id*. He also denied any change in bowel habits, painful bowel movements,

constipation, diarrhea, hematemesis, hematochezia, jaundice, and black stools. Tr. 350. On examination, palpation of the abdomen showed no distension, organomegaly, or tenderness; no palpable abdominal masses or hepatosplenomegaly; and abdominal wall was firm. *Id*. Dr. Alvarez did not think Plaintiff's abdominal pain was due to celiac stenosis and ordered a CT angiogram. *Id*.

On February 23, 2018, Plaintiff attended a general adult medical evaluation with primary care physician John Ward, D.O. ("Dr. Ward"). Tr. 319-20. Plaintiff complained of ongoing abdominal pain and reported that he suffered from a malrotation of his bowels which caused "small[-]sized stools and lots of abdominal pain." *Id*. Physical examination findings were normal, including abdomen that was soft, non-tender, and non-distended, and normal bowel sounds. Tr. 320.

On March 3, 2018, Plaintiff had an evaluation with Pamela A Hennesen, RPA-C ("Ms. Hennesen"), at Gastroenterology Associates LLP ("Gastroenterology Associates"). Tr. 303-05. Plaintiff reported a history of abdominal pain and nausea symptoms with up to 15 bowel movements per day. Tr. 303. Other reported symptoms included, chills fatigue, night sweats, dry eyes, light-headedness, joint pain, stiffness, numbness, tinging, difficulty concentrating, and sleep disturbance. Tr. 304. He also reported difficulty concentrating and sleep pattern disturbance. *Id*. Ms. Hennesen recommended a CT angiogram of the mesenteric vessels and prescribed hyoscyamine tablets for Plaintiff's abdominal cramps and to see if it helped with insomnia. Tr. 305. At a follow up visit on April 20, Plaintiff reported improvement with hyoscyamine tablets. Tr. 306.

On October 23, 2018, Jeffrey Visco, M.D. ("Dr. Visco"), at Buffalo Medical Group ("BMG"), evaluated Plaintiff for chronic abdominal pain. Tr. 327. Plaintiff reported "chronic and

intermittent but worsening left and right abdominal pain;" he had been assessed by "multiple providers;" and had "extensive follow up, which revealed a complete malrotation of his intestines." *Id*. Plaintiff denied any vomiting or change in appetite, and his last colonoscopy was negative. *Id*. After reviewing Plaintiff's previous records, Dr. Visco recommended a "LADD's procedure."[4] Tr. 329. On October 29, 2018, a CT scan showed developmental nonrotation of the bowel with small bowel on the right and large bowel on the left. Tr. 342.

On February 1, 2019, Plaintiff attended an initial psychiatric evaluation with Ms. Merlin at Suburban Psychiatric Associates. Tr. 367-69. He reported he was "good mentally, but not physically." Tr. 367. However, he also reported increased anxiety related to his medical issues and upcoming bowel surgery. Tr. 367. Ms. Merlin noted that Plaintiff was "very future oriented" and "hope[d] to return to work." *Id*. He reported "very broken" sleep, only sleeping about three hours, and he felt "fatigued most days." *Id*. On psychiatric examination, he appeared in mild to moderate distress; he described his mood as "anxious and okay;" and his affect was appropriate to his mood. Tr. 368.

Plaintiff underwent the Ladd's procedure on February 13, 2019. Tr. 401-04. He generally reported improvement in his abdominal symptoms following his surgery. At a follow-up visit with Ms. Merlin on March 19, 2019, Plaintiff reported struggling with sleep and "some pain" but reported his pain had been "more tolerable" since his surgery, and "overall surgery went well." Tr. 370. Ms. Merlin noted that his "mood seem[ed] to be improving a bit as well." *Id*. Ms. Merlin also discussed Plaintiff's missed appointments and compliance issues. Tr. 371. She prescribed

---

[4] The Ladd's procedure is the standard corrective measure for intestinal malrotation and consists of division of peritoneal bands (Ladd's bands) traversing the posterior abdomen, reduction of volvulus, appendectomy, and functional positioning of the intestine with or without fixation.  National Library of Medicine, Laparoscopic Treatment of Intestinal Malrotation in Adults, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3015603/ (last visited Dec. 14, 2023).

"Ambien for sleep for 2-3 months only until surgery site is healed and nighttime pain [has] improved." *Id*,

At a post-operative visit with Dr. Visco on March 20, 2019, Plaintiff denied complaints of fever and chills, appetite change, or excessive fatigue/sleepiness, and had no nausea, vomiting, or diarrhea. Tr. 396-97. His physical examination was essentially normal. Tr. 397. His wound was clean with no signs of infection, and Dr. Visco indicated that Plaintiff was able to return to normal activity. *Id*.

On April 2, 2019, Plaintiff had a follow-up visit with Dr. Alvarez at Vascular Associates for evaluation of possible mesenteric stenosis. Tr. 355-57. Dr. Alvarez noted that Plaintiff's recent surgery had resolved most of his symptoms. Tr. 355.  However, he noted that mesenteric duplex imaging had not yet been performed and recommended that be done next. *Id*. Plaintiff's physical examination findings were normal. Tr. 355-56.

Plaintiff established primary care with Christian Lates, M.D. ("Dr. Lates"), on June 4, 2019. Tr. 568-70. He reported abdominal pain with nausea and vomiting for many years which had significantly improved after surgery in February. Tr. 570. Plaintiff reported he was being followed by colorectal surgery and had questions about further workup. *Id*.

On June 7, 2019, Plaintiff received a psychiatric consultative examination from Susan Santarpia, Ph.D. ("Dr. Santarpia"). Tr. 382-85. He reported sleep difficulty, decreased appetite, feeling loss of productivity, loss of social life, dysphoric mood, hopelessness, loss of interest, irritability, feelings of worthlessness, diminished self-esteem, diminished sense of pleasure, and social withdrawal. Tr. 382-83. He denied any formal psychiatric diagnoses or treatent. Tr. 382. He was able to dress, bathe, groom himself, cook, clean, do laundry, shop, and manage his own money. Tr. 384. He held a driver's license and drove himself to his appointment, and he endorsed

socialization with friends and family, watching TV, and taking care of his dog and fish. Tr. 382, 384. Plaintiff's mental status exam showed average cognition and intact memory, attention, and concentration, and he was cooperative with no deficits in grooming, appearance, eye contact, motor behavior, speech, mood, or affect. Tr. 383-84.

Dr. Santarpia opined that Plaintiff was able to understand, remember or apply simple as well as complex directions and instructions; use reason and judgment to make work-related decisions; sustain concentration and perform a task at a consistent pace; sustain an ordinary routine and regular attendance at work; maintain personal hygiene and appropriate attire, and be aware of normal hazards and take appropriate precautions within normal limits. Tr. 384. Dr. Santarpia also opined that Plaintiff demonstrated a mild impairment in the ability to interact adequately with supervisors, coworkers, and the public and regulate emotions, control behavior, and maintain well-being. *Id*. She further opined that Plaintiff's difficulties were caused by his general medical condition/stressors, and the results of the evaluation were consistent with psychiatric problems that, until stabilized or treated, may interfere with Plaintiff's ability to function on a daily basis. Tr. 384-85.

Plaintiff also received an internal medicine consultative examination from Dr. Dantoni on June 7, 2019. Tr. 386-90. Plaintiff reported his history of malrotation with corrective surgery and other abdominal problems. Tr. 386. Plaintiff reported that since his February 2019 surgery, he had improved "a lot." *Id*. His food allergies had disappeared; he was "able to eat a little bit better;" and his pain had reduced from "six separate pains that were 10/10" to only "three pains that are 10/10." *Id*. However, he reported needing to use the bathroom roughly 25 times daily after surgery. *Id*. On physical examination, Dr. Dantoni observed slight abdominal tenderness and normal bowel sounds, but the examination was otherwise unremarkable. Tr. 377-88. On mental status

examination, Dr. Dantoni noted that Plaintiff was dressed appropriately, had good eye contact, and appeared oriented in all spheres. Tr. 389. He showed no evidence of impaired judgment or significant memory impairment. *Id*. His affect was "somewhat abnormal." *Id*. Dr. Dantoni also noted that Plaintiff was "extremely distressed" by his diagnoses and symptoms and "appear[ed] to be quite depressed about his current situation." *Id*.

Dr. Dantoni opined that Plaintiff had mild limitations in prolonged standing and walking due to his severe abdominal pain and no limitation for sitting, climbing stairs, lifting, carrying, kneeling, reaching, handling objects, hearing, seeing, or speaking. Tr. 389. Dr. Dantoni also noted that Plaintiff "may experience significant schedule interruptions due to his need to use the bathroom up to 25 times a day" and due to abdominal pain. *Id*.

On June 14, 2019, state agency psychological consultant M. Butler, Ph.D. ("Dr. Butler"), reviewed the then-available evidence of record and concluded that Plaintiff did not have a severe mental impairment. Tr. 90-97. Dr. Butler's findings were affirmed in October 2019 by Dr. E. Gagan. Tr. 113-14.

State agency medical consultant D. Miller, D.O. ("Dr. Miller"), reviewed Plaintiff's file on June 13, 2019. Tr. 97-102. Dr. Miller found that Plaintiff could perform medium work. Tr. 102. Dr. Miller's assessment was affirmed by J. Koenig, M.D. ("Dr. Koenig") on September 19, 2019. Tr. 115-17.

On November 14, 2019, Plaintiff followed up with Dr. Lates, complaining of "abdominal crampiness and pain after meals." Tr. 564-66. Plaintiff noted that certain foods, such as fatty meals, triggered more discomfort than others. Tr. 564. He also reported that "having a couple of beers" and medical marijuana helped alleviate his symptoms. *Id*. Plaintiff also had questions about a

recommendation from GI to double his Omeprazole dosage. Tr. 564-65. Physical examination findings were unremarkable, and Dr. Lates increased Omeprazole to 40 mg. Tr. 565-66.

On October 2, 2019, Plaintiff consulted with gastroenterologist Ramon Rivera, M.D. ("Dr. Rivera") for his abdominal pain. Tr. 431-33. He was status-post his Ladd's procedure with Dr. Visco. Tr. 431. He reported he continued to have "abdominal discomfort," but this was "much improved" since having the procedure. *Id*. He also continued to have reflux symptoms and nausea but denied complaints of vomiting, fevers, melena, hematochezia, or weight loss. *Id*. He also reported body aches, chills, fatigue, nausea, and rectal pain. Tr. 432. On examination, there was mild diffuse abdominal tenderness. Tr. 433.

Plaintiff had a follow-up visit with Dr. Rivera on November 25, 2019. Tr. 423-25. He continued to complain of chronic abdominal pain but denied nausea, vomiting, diarrhea, or changes to bowel habits. Tr. 423-24. He reported using cannabis for pain "but with incomplete relief." Tr. 424. On examination, there was focal tenderness on deep palpation in the right upper quadrant. Tr. 425. Dr. Rivera assessed "chronic abdominal pain with a functional component" and recommended increasing Omeprazole. *Id*.

During a visit with Dr. Rivera on January 31, 2020, Plaintiff had no complaints of diarrhea, but he reported increased frequency of bowel movements in the morning. Tr. 427-28. He reported "3-15 bowel movements daily[;] they are painful[; and he could] only tolerate one meal." *Id*. Plaintiff reported that he had initially experienced some improvement by increasing Omeprazole to twice per day, but improvement had decreased over the past couple of weeks. Tr. 429. Dr. Rivera recommended continuing the increased dosage for another four weeks and noted that Plaintiff was to follow up with vascular surgery. *Id*.

On April 2, 2020, Plaintiff had a video follow-up with vascular surgeon Dr. Alvarez. Tr. 491. He reported continued abdominal pain especially when he started eating a meal. Tr. 491. However, he reported that he has the least amount of pain when he fasts for most of the day. *Id*. Dr. Alvarez noted that GI had ruled out all other possibilities of symptomology and noted that the only positive finding was "abnormal finding in the celiac,' which he "confirmed on CAT scan." *Id*. Dr. Alvarez determined that Plaintiff needed to undergo angiography. *Id*.

On May 6, 2020, Plaintiff was evaluated by Mark Frost, M.D. ("Dr. Frost"), at DENT Neurologic Institute ("DENT"), regarding his sleep habits. Tr. 592-94. He reported several years of difficulty sleeping primarily due to his chronic abdominal pain. Tr. 592. He also reported taking Ambien 12.5 mg at bedtime and sometimes a second dose later in the night. *Id*. He reported no snoring and no witnessed apnea episodes. *Id*.  Physical examination findings were unremarkable, and Dr. Frost found no significant pertinent findings or complaints other than those reported by Plaintiff (Tr. 593-94) and stated that it was "unclear" that there was much to offer from a "pure sleep standpoint," but he would look into other issues, such as nutritional issues and restless leg syndrome, and ordered laboratory testing (Tr. 594). Dr. Frost agreed that using Ambien nightly was reasonable, but he advised that Plaintiff should not take more than one pill per night. Tr. 594.

On June 2, 2020, Dr. Alvarez noted that results of Plaintiff's mesenteric angiogram and intravascular ultrasound showed "no evidence of stenosis whatsoever." Tr. 493. He suspected that the abnormally elevated velocities in Plaintiff's blood vessels were from the malrotation surgery. *Id*. Dr. Alvarez stated he was unsure of the origin of Plaintiff's abdominal pain, but it was "certainly not vascular." *Id*. Accordingly, Plaintiff was discharged from vascular care. Tr. 494.

On June 17, 2020, Plaintiff followed up with Dr. Lates for removal of sutures from his right palm. Tr. 560. He reported he had been seen at Immediate Care and informed that his hand was

fractured, and he needed a referral to a hand specialist. *Id*. Plaintiff reported that his abdominal pain remained "problematic." Tr. 560. He denied diarrhea, nausea, or change in bowel habits. Tr. 561. Plaintiff's sutures were removed without complication, and Dr. Lates noted that Plaintiff was being followed by GI and colorectal surgery. Tr. 562.

On July 8, 2020, Plaintiff had a follow-up with DENT nurse practitioner Elinor Markowski, ANP ("Ms. Markowski), for insomnia and restless leg syndrome. Tr. 587-89. He reported that Zolpidem had been helpful. Tr. 587. Ms. Markowski noted that Plaintiff was to have his blood work done prior to his visit, but he had not done so. *Id*. She continued Zolpidem nightly and arranged for Plaintiff to have lab work after his visit. Tr. 589.

On July 17, 2020, Ms. Merlin completed a Mental Residual Functional Capacity Questionnaire, which was submitted to the Appeals Council after the ALJ's August 2020 decision. Tr. 36 40. Ms. Merlin reported that Plaintiff had increased anxiety and frustration, chronic pain, and depression. Tr. 36. She noted symptoms including anhedonia, appetite disturbance, decreased energy, generalized persistent anxiety, mood disturbance, difficulty thinking or concentrating, persistent disturbance of mood or affect, emotional withdrawal or isolation, illogical thinking, pressure of speech, sleep disturbance, and panic attacks. Tr. 37. Ms. Merlin opined that Plaintiff was "limited but satisfactory" in all mental abilities and aptitudes needed to do unskilled work and "limited but satisfactory" in all mental abilities and aptitudes needed to do semi-skilled and skilled work. Tr. 38-39. She also indicated that Plaintiff could engage in full-time competitive employment on a sustained basis but also opined Plaintiff's impairments or treatment would cause him to be absent from work about three days per month on average. Tr. 40.

I.      **The Appeals Council Properly Considered Plaintiff's Post-Decision Evidence.**

Plaintiff first argues that the Appeals Council erred by declining to consider Ms. Merlin's July 2020 opinion (Tr. 36-40) submitted to the Appeals Council after the issuance of the ALJ's decision. *See* ECF No.6-1 at 12-16. As an initial matter, the Court finds the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision. *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The regulations expressly authorize claimants to submit new and material evidence[5] to the Appeals Council without a "good cause" requirement, if it relates to the period on or before the ALJ's decision. *Id*. (citing § 404.970(b) and § 416.1470(b)). The Appeals Council evaluates the entire record, including any new and material evidence submitted if it is chronologically relevant, to determine if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. *See* 20 C.F.R. § 404.970(b); *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014).

Accordingly, the new evidence should be treated as part of the administrative record. *Id*. The Appeals Council is required to "evaluate the entire record including the new and material evidence submitted . . . [and] review the case if it finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the evidence currently of record." § 404.970(b); *see also* § 416.1470(b). *Id*. "Therefore, when the Appeals Council denies review after considering new evidence, the Secretary's final decision "necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence." *Id*. (citing *O'Dell v. Shalala*,

---

[5] Evidence is "new" when it has not been considered previously in the administrative process. *See Ovitt v. Colvin*, 2014 WL 1806995, *3 (N.D.N.Y. May 7, 2014). New evidence is "material" where it is both relevant to the plaintiff's condition during the relevant time period, and probative. *Pollard v. Halter*, 377 F.3d 183, 193 (2d Cir. 2004). "The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Id*.

44 F.3d 855, 859 (10th Cir. 1994). Accordingly, the administrative record before this Court consists of all evidence submitted prior to judicial review, including any new evidence that was not before the ALJ.

In addition, the regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented. 20 C.F.R. § 404.967 (only requires Appeals Council to notify the party of its action), and § 404.970 (does not mention any information that must be in the denial notice). Furthermore, the Second Circuit has specifically acknowledged that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of *certiorari*. *See Pollard*, 377 F.3d, at 192 (citations omitted). Thus, the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision, as Plaintiff suggests. *See* ECF No. 6-1 at 23-24. Contrary to Plaintiff's argument that the Appeals Council "failed to evaluate" or "substantively assess" Ms. Merlin's opinion (*see* ECF No. 6-1 at 13), as explained above, the Appeals Council was not required to elaborate further.

Furthermore, the Court has reviewed the entire record, including the additional evidence, and finds that Plaintiff has failed to show that the additional evidence, when considered with the entire record, rendered the ALJ's decision erroneous. *See Bushey*, 552 F. App'x at 98. Even taking this evidence into account, substantial evidence supports the ALJ's finding that Plaintiff was capable of light work with additional postural and environmental limitations, and his degree of functional limitation in the areas of understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; and, adapting or managing oneself was none-to-mild. Tr. 14-15. Under 20 C.F.R. § 404.1520a(d)(1), mild or less restrictions in these areas are equivalent to not having a severe impairment.

Ms. Merlin indicated that Plaintiff had either "unlimited or very good" or "limited but satisfactory" functioning in all mental abilities and aptitudes needed to do unskilled work and had "limited but satisfactory" functioning in all mental abilities and aptitudes needed to do semi-skilled and skilled work. Tr. 38-39. As the ALJ noted, this portion of Ms. Merlin's opinion was consistent with the opinions of Dr. Santarpia and Dr. Butler, who found that Plaintiff's mental conditions caused no more than mild limitation or were non-severe, opinions which the ALJ reasonably accepted as consistent with the record evidence and properly relied on in formulating the RFC finding. Tr. 14-16, 18. Yet, Ms. Merlin also indicated that Plaintiff's impairments would cause him to be absent from work about three days per month on average, which was at odds with her opinion of "limited but satisfactory" abilities in areas of mental functioning and her belief that Plaintiff could engage in full-time competitive employment on a sustained basis. Tr. 40. *See, e.g., Micheli v. Astrue*, 501 F. App'x 26, 28 (2d Cir. 2012) ("A physician's opinions are given less weight when his opinions are internally inconsistent.").

First, Ms. Merlin's opinion was inconsistent with Plaintiff's largely normal mental status examination findings, conservative treatment, and activities of daily living. As the ALJ noted, despite Plaintiff's alleged memory problems, he reported being able to follow spoken and written instructions. Tr. 14, 237. The ALJ also noted that, while Plaintiff reported problems getting along with others, including former co-workers and authority figures, he was able to shop in stores and spend time with others (Tr. 229-47), and he also denied problems dealing with stress or changes in schedule (Tr. 237). Tr. 14-15.

The ALJ also properly considered Plaintiff's conservative mental health treatment, which showed largely normal mental status findings and improvement with medication. Tr. 14-15. As the ALJ noted, aside from some initial visits, Plaintiff's mental health treatment notes generally

documented no significant deficits in mood, affect, memory, attention, or thought content. Tr. 14, 366-76, 425, 433, 443-73. The ALJ also noted that Plaintiff's other treatment records, such as primary care treatment notes, failed to document significant and continued mental status deficits. Tr. 14, 353, 562. Accordingly, the ALJ properly considered Plaintiff's conservative treatment and the overall dearth of evidence of abnormalities throughout the record in concluding that Plaintiff's mental health impairments were not severe, and he remained capable of performing skilled work. SSR 16-3p, 2017 WL 5180304, at *9 (ALJ properly considers whether level of treatment is commensurate with level of complaints). *See Reynolds v. Colvin*, 570 F. App'x 45, 47 (2d Cir. 2014) ("A lack of supporting evidence on a matter where the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits.").

The ALJ also properly considered Plaintiff's daily activities. *See Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020) (upholding a finding that activities such as driving, cleaning, doing laundry, cooking, and shopping, tended to support a finding that the claimant was capable of concentrating and staying on task sufficiently to perform work activities). As the ALJ further noted, although Plaintiff testified that he did not perform many household tasks and chores, he admitted that he could perform personal care, clean, do laundry, shop, drive, and manage funds. Tr. 18, 72-73, 382-85. He also reported grocery shopping two to three times per week and socializing one to two times per week. Tr. 233-34.

Ms. Merlin's opinion was also inconsistent with the June 2019 opinion of psychiatric consultative examiner Dr. Santarpia, which the ALJ properly found persuasive. Tr. 18, 382-85. As noted above, Dr. Santarpia opined that Plaintiff had only a mild impairment in the ability to interact adequately with supervisors, coworkers, and the public and regulate emotions, control

behavior, and maintain well-being, and assessed no limitations in other aspects of mental functioning. Tr. 384. Dr. Santarpia further opined that Plaintiff could sustain an ordinary routine and regular attendance at work. *Id*. As the ALJ noted, Dr. Santarpia's opinion was supported by the completely unremarkable examination findings and consistent with the record overall, including Plaintiff's conservative treatment history, ability to perform daily activities, and generally normal mental status during treatment. Tr. 18.

The ALJ also properly considered and found persuasive the June 2019 findings of state agency consultant Dr. Butler (which were affirmed by Dr. Gagan in October 2019), concluding that Plaintiff did not have a severe mental impairment. Tr. 18, 97. As the ALJ explained, Dr. Butler's opinion was supported by explanation and review of evidence and, like Dr. Santarpia's opinion, was consistent with the record as whole. Tr. 18. *See Camille*, 652 F. App'x at 28; 20 C.F.R. § 404.1513a(b)(1).

Based on the foregoing, Ms. Merlin's assessment does not demonstrate that Plaintiff was more limited than the ALJ already found, and substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were not severe and did not preclude the performance of skilled light work. Tr. 16. Accordingly, the Court finds that the Appeals Council properly found that Ms. Merlin's opinion did not show a reasonable probability that it would change the outcome of the ALJ's decision.

## II.    The ALJ Reasonably Did Not Find Dr. Dantoni's Opinion Persuasive.

Plaintiff next argues that the ALJ erred in his evaluation of Dr. Dantoni's opinion, and therefore, the ALJ's RFC determination was not supported by substantial evidence. *See* ECF No. 6-1 at 17-21. A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e),

404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*,

508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on April 8, 2019, and therefore, the 2017 regulations are applicable to his claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings.  The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or

give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency.  *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ properly considered Dr. Dantoni's June 2019 consultative examination but did not find it fully persuasive. Tr. 19, 386-91 Contrary to Plaintiff's argument (*see* ECF No. 6-1 at 17-20), the ALJ thoroughly considered the supportability and consistency factors and the totality of the evidence in evaluating Dr. Dantoni's opinion and did not err in finding that, while mild limitations in physical function were consistent with the overall record, his opinion regarding Plaintiff's need for frequent schedule interruptions due to abdominal pain and need to use the restroom was unpersuasive. *See* 20 C.F.R. § 404.1520c(a)-(c); *Barry v. Colvin*, 606 F. App'x 621, 624 (2d Cir. 2015) (an ALJ is not bound to include in the RFC finding every specific limitation assessed by a consultative examiner, and could, instead, exercise discretion in reviewing the record evidence in its totality).

23

As the ALJ explained, Dr. Dantoni's assessment that Plaintiff might experience significant schedule interruptions due to his need to use bathroom up to 25 times per day and due to his abdominal pain was not supported by the examination findings and appeared to be based on Plaintiff's subjective complaints at the time. Thus, the doctor's assessment merely reproduced Plaintiff's reports, which the ALJ reasonably found unpersuasive. *See Polynice v. Colvin*, 576 F. App'x 28, 31 (2d Cir. 2014) ("Much of what Polynice labels 'medical opinion' was no more than a doctor's recording of Polynice's own reports of pain.").

Furthermore, as the ALJ pointed out, although Plaintiff reported a history of intestinal problems with the need to use the restroom 25 times per day, his physical examination in June 2019 was generally normal with only slight abdominal tenderness noted. Tr. 17, 386-89. Similarly, treatment records from Dr. Lates in June 2019 showed that Plaintiff reported significant improvement in abdominal pain and nausea after surgery. Tr. 570. At a visit with Dr. Rivera in October 2019, Plaintiff denied diarrhea and reported that his abdominal discomfort was much improved since his surgery. Tr. 431-32. Therefore, Plaintiff's argument that the ALJ did not consider the supportability factor with respect to the opinion on schedule interruption is unpersuasive. *See* 20 C.F.R. § 404.1520c(c)(1) (supportability).

Moreover, Dr. Dantoni's limitations were not consistent with Plaintiff's often-noted lack of distress and his frequent denials of diarrhea or changes in bowel habits, which the ALJ discussed throughout the decision with appropriate citations to the record evidence. Tr. 17-19. *See* 20 C.F.R. § 404.1520c(c)(2) (consistency). Thus, contrary to Plaintiff's contention (*see* ECF No. 6-1 at 17-20), the ALJ's reasoning for finding Dr. Dantoni's opinion unpersuasive is sufficiently clear and detailed. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (when "the evidence of record permits us to glean the rationale of the ALJ's decision, we do not require that he have

mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."); *see also Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 -13 (2d Cir. 2010) (Court can look to other parts of an ALJ's decision in concluding that individual findings are supported); *Green v. Comm'r of Soc. Sec.*, No. 19-CV-456- HBS, 2020 WL 5554515, at *3 (W.D.N.Y. Sept. 17, 2020) ("The ALJ's reasoning on this issue is not fully explicit, but the decision as a whole permits the Court to glean his rationale.").

Here, the ALJ discussed Plaintiff's largely normal physical exam findings throughout the relevant period. Tr. 17-18. For instance, the ALJ acknowledged Plaintiff's history of intestinal malrotation, for which he sought ongoing treatment for abdominal pain, nausea, and frequent bowel habits. Tr. 16-17, 305, 306, 310, 337-44, 363-64, 434-35, 474-515, 516-57. The ALJ further acknowledged that Plaintiff underwent a Ladd's procedure in early 2019. Tr. 17, 327-27, 337-44, 395-415. However, the ALJ explained that the overall record, including Plaintiff's lack of distress, generally only mild abdominal tenderness, stable BMI, and normal muscle strength and gait, did not support the extent to which Plaintiff alleged he was limited. Tr. 17.

For example, the ALJ discussed treatment records from vascular surgeon Dr. Alvarez from February 2018 to June 2020 showing that Plaintiff was repeatedly observed to be in no distress with no significant deficits on examination during visits. Tr. 17, 345-65, 474-515, 516-57. The ALJ similarly discussed records from Plaintiff's primary care treatment with Dr. Ward between February 2018 and February 2019, where Plaintiff was generally in no distress with only mild abdominal tenderness noted at times. Tr. 17, 317-20, 377-81, 558-84.

The ALJ also discussed Plaintiff's treatment records from Gastroenterology Associates. Tr. 17, 303-05. Although in March 2018 Plaintiff alleged having 15 bowel movements per day,

the ALJ noted that Plaintiff's examination showed only mild abdominal tenderness; and he was in no distress with positive bowel sounds, no distension, rebound tenderness, or rigidity, normal gait, and normal strength. *Id*. At a visit the next month in April 2018, he was noted to have a good response to medication, adequate bowel movements, and normal physical examination findings. Tr. 17, 306-07.

The ALJ also discussed records noting that Plaintiff generally reported improvement after his Ladd's procedure in February 2019. Tr. 17. As the ALJ pointed out, Plaintiff denied diarrhea at a post-operative examination, he reported no nausea or change in bowel habits, and Dr. Visco noted that Plaintiff's "previous pains [had] essentially resolved." Tr. 17, 330. The ALJ also noted that records of Plaintiff's treatment with Dr. Alvarez in April 2019 similarly noted that the surgery resolved most of his symptoms (Tr. 355), and he denied any change in bowel habits, painful bowel movements, and diarrhea (Tr. 347, 353). Tr. 17.

As the ALJ further discussed, Plaintiff denied nausea, vomiting, diarrhea, or changes to bowel habits at a gastrointestinal follow-up visit in November 2019. Tr. 17, 423-24. In January 2020, Plaintiff reported increased bowel movements in the morning and three to five bowel movements per day but no diarrhea. Tr. 17, 427-28. His abdomen was soft and non-distended with no significant tenderness on exam. Tr. 429. Plaintiff again denied diarrhea in April 2020. Tr. 17, 492. In May 2020, he denied diarrhea and his abdomen was non-tender and non-distended. Tr. 575. At a visit in June 2020, Plaintiff reported intermittent abdominal pain that remained "problematic" but continued to deny diarrhea, nausea, or change in bowel habits. Tr. 17, 560-61. His abdomen was soft and non-tender on examination. Tr. 562. He also denied diarrhea at another visit that month. Tr. 493.

In addition, despite Plaintiff's testimony that he suffered from diarrhea and sometimes used the restroom 20 times per day (Tr. 56-58, 61-62), the ALJ noted that Plaintiff only reported increased bowel movements sporadically, and at many visits, he specifically denied changes in bowel habits or diarrhea, suggesting that he did not need bathroom breaks as often as alleged. Tr. 18, 330, 347, 350, 353, 356, 424, 427, 492, 493, 561, 570, 575. *See Prince v. Astrue*, 490 F. App'x 399, 400 (2d Cir. 2013) ("disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" (quoting *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983)).

Notably, Plaintiff testified that he believed he had "been permanently physically disabled [his] whole life" due to his conditions. Tr. 72-76. Nevertheless, he was able to work at substantial gainful activity levels for multiple years prior to the alleged onset date, as the ALJ pointed out. Tr. 18, 48, 50-54, 223. Thus, the record suggests that Plaintiff was still able to work even during periods when he believed he was disabled. As the Second Circuit has recognized, a condition that had not deteriorated from the time the claimant was working cannot be disabling under the Act. *See Snell v. Apfel*, 177 F.3d 128, 136 (2d Cir. 1999).

The ALJ also considered the June 2019 prior administrative medical findings of state agency medical consultants Dr. Miller, which were affirmed in September 2019 by Dr. Koenig. Tr. 18-19, 98-100, 115-17. The ALJ explained that Dr. Miller's finding that Plaintiff could perform medium work was supported by explanation and by citation to evidence and was not inconsistent with the finding that Plaintiff was not disabled. Tr. 18-19. Nevertheless, the ALJ explained that the findings were only somewhat persuasive because the overall record, including Plaintiff's pain and need for surgery, supported a limitation to light work. Tr. 18-19. *See Ramsey v. Comm'r of*

*Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (affirming where ALJ in some instances deviated from opinions to decrease the plaintiff's RFC, based on other evidence in the record); *see also Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (the opinions of state agency medical consultants can constitute substantial evidence when supported by other evidence in the record); 20 C.F.R. § 404.1513a(b)(1) (State agency medical consultants are highly qualified and experts in Social Security disability evaluation). Accordingly, the ALJ accounted for Plaintiff's difficulties by limiting him to light work with additional postural and environmental limitations. Tr. 16.

Thus, the ALJ clearly explained his reasons for finding Dr. Miller's findings somewhat persuasive because they were supported by and partially consistent with the record evidence, while finding Dr. Dantoni's assessment of possible schedule interruptions not persuasive because it was uncorroborated by and inconsistent with the evidence. In so doing, the ALJ resolved genuine conflicts in the evidence, as was his duty. *See Veino*, 312 F.3d at 588.

Moreover, in reconciling the evidentiary conflicts, the ALJ also considered Plaintiff's daily and work-like activities, which were at odds with his claims of total disability and, significantly, supported at least an RFC for restricted light work. Tr. 18. For example, the ALJ noted that despite Plaintiff's complaints of disabling symptoms and limitations, he reported repairing his roof in July 2019. Tr. 18, 60-61, 65, 454. He also reported working for four hours at a time with help from his son and neighbor and "getting to work out more" around that time, which suggested a greater functional ability than alleged. Tr. 18. 454. As the ALJ further noted, although Plaintiff testified that he did not perform many household tasks and chores (Tr. 72-73), he admitted that he could perform personal care, clean, do laundry, shop, drive, and manage funds. Tr. 18, 382-85. He also reported grocery shopping two to three times per week and socializing one to two times per week. Tr. 233-34. *See Poupore*, 566 F.3d at 307 (an ALJ reasonably found that a claimant's ability to

perform daily activities, such as household chores, belied her subjective complaints); *Snyder v. Saul*, 840 F. App'x 641, 643 (2d Cir. 2021) (ALJ properly considered that the plaintiff managed most of his activities of daily living himself when discounting the plaintiff's complaints of disabling pain and inability to work).

As explained above, RFC is an administrative finding, not a medical one. The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, the ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Accordingly, the ALJ properly considered a wide range of medical and non-medical evidence when developing Plaintiff's RFC, and substantial evidence supports the ALJ's finding that Plaintiff could perform light work with additional postural and environmental limitations that was consistent with his past relevant work as a sales manager and master fire alarm mechanic, as well as other work existing in significant numbers in the national economy. Tr. 16, 19-21. *See* 20 C.F.R. §§ 404.1527, 416.927. Although Plaintiff cites evidence he characterizes as supporting Dr. Dantoni's opinion (*see* ECF No. 6-1 at 18-20), this is insufficient under the substantial evidence standard. "If the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014); *see also DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998); *Alston v. Sullivan*,

904 F.2d 122, 126 (2d Cir. 1990) (Commissioner's decision must be upheld if supported by substantial evidence, even if there is also substantial evidence for Plaintiff's position).

As previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

As detailed above, substantial evidence in the record supports the ALJ's conclusion that Plaintiff was not disabled during the period at issue. When "there is substantial evidence to support either position, the determination is one to be made by the factfinder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## <u>CONCLUSION</u>

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 6) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 7) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE